1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 DAVID RAYMOND ANDREWS,               )    Civil No.06cv2447 LAB (NLS)
                                        )
           Plaintiff,                   )    **REPORT AND RECOMMENDATION**
12 v.                                   )    **FOR ORDER GRANTING**
                                        )    **DEFENDANTS' MOTION TO DISMISS**
13 M.C. WHITMAN, Corrections Counselor; )
   G.J. JANDA, Chief Deputy Warden; M.E.)    [Doc. No. 78]
14 BOURLAND, Chief Deputy Warden; T.    )
   OCHOA, Chief Deputy Warden; C.       )
15 BUTLER, Captain; W.C. ROBERTS,       )
   Captain; F. RUTLEDGE, Sergeant;      )
16 CALIFORNIA DEPARTMENT OF             )
   CORRECTIONS, a public entity; ET ALIA)
17 UNIDENTIFIED DEFENDANTS,             )
                                        )
18         Defendants.                  )
                                        )
19 ─────────────────────────────────────

20         David Raymond Andrews (Plaintiff), a California prisoner proceeding pro se, filed an initial

21 complaint under 42 U.S.C. sections 1983 and 1985 on November 3, 2006.  The Court dismissed the

22 complaint without prejudice and granted Plaintiff leave to amend.  Plaintiff filed a first amended

23 complaint (FAC) against officials at Calipatria State Prison.  He alleges that defendants California

24 Department of Corrections and Rehabilitation (CDCR), T. Ochoa, M. Whitman, C. Butler, S. Rutledge

25 III, G. Janda and W.C. Roberts (Defendants) violated his rights to due process, equal protection, petition

26 the court, and to be free from cruel and unusual punishment.  FAC at 5.

27         Defendants filed a motion to dismiss the FAC on these bases: (1) Plaintiff failed to exhaust the

28 required administrative remedies under the Prison Litigation Reform Act (PLRA); (2) the FAC fails to

                                         1                            06cv2447 LAB (NLS)

state a claim against any Defendant; and (3) Defendants are entitled to qualified immunity.  Defendants also renewed their request that Plaintiff be charged a "strike" for filing a frivolous and malicious lawsuit, pursuant to 28 U.S.C. § 1915(g).  Plaintiff opposes.

This Court has reviewed all the pleadings and filings in this case, and **RECOMMENDS** that Defendants' motion be **GRANTED**.

<u>BACKGROUND</u>

**The Original Complaint.**

Plaintiff's original complaint centered on his allegations that on September 15, 2005, Sergeant Galban sexually abused and threatened Plaintiff in housing unit B-5.  Compl. at 7.  Over the next several days Plaintiff was shuttled between administrative segregation and the general population due to his threat to the safety and security of the institution.  Compl. at 7-8, 15.  Plaintiff detailed his thwarted attempts to file an administrative complaint regarding Sergeant Galban's conduct.  He alleged due process, equal protection, eighth amendment and first amendment retaliation claims against Defendants.

**Order Dismissing the Original Complaint.**

The Court issued an order on March 28, 2008 that dismissed all the original claims in the complaint, including some with prejudice. [Doc. No. 70.] It dismissed Plaintiff's due process, equal protection and first amendment retaliation claims and one eighth amendment claim without prejudice.  The Court dismissed with prejudice the remaining eighth amendment claims involving Defendants' transfer of Plaintiff back into the general population in 2006.

Regarding exhaustion, the Court found that Plaintiff could not have exhausted claims relating to Defendants' transfer of Plaintiff back to the general prison population in 2006.  The Court found that exhaustion would have been impossible because Plaintiff alleged he filed an administrative complaint on October 18, 2005, before the claims based on acts in 2006 could have arisen.  Mar. 28 Order, p.7.  The Court determined that because Plaintiff could not now exhaust those 2006 claims, he could not have leave to amend them for this suit.  *Id.*

The Court also noted that Plaintiff did not state any claims against defendant Bourland because Bourland was never served in the action.  Mar. 28 Order, p.8.  It also dismissed the CDCR as a Defendant on sovereign immunity grounds.  *Id.*

2

Finally, the Court denied without prejudice Defendants' motion to dismiss for failure to exhaust because Defendants had not met their burden of proving non-exhaustion.  Mar. 28 Order, p.9.

**Plaintiff's First Amended Complaint.**

In general, Plaintiff realleges in the FAC his over-arching claim that Calipatria prison staff prevented him from filing a complaint against Sergeant Galban in 2005 for sexual misconduct, and for a conspiracy to organize stabbings and assaults of selected prisoners by inmates.  FAC at 7.  He claims Defendants engaged in cruel and unusual punishment by first placing him in Calipatria's administrative segregation and then eventually placing him in the Security Housing Unit (SHU) at Pelican Bay State Prison.  Plaintiff alleges that every administrative act–including issuing and hearing various rules violation reports regarding Plaintiff's failure to abide by prison policies and procedures–was done in retaliation for his pursuing a complaint against Sergeant Galban.  His allegations span events occurring from 2005 to 2008.

Plaintiff attaches several exhibits to the FAC.  Those exhibits show, among other things, results of investigations into Plaintiff's complaints, rules violation reports, reasons for disciplinary decisions and placement notices.

Here, the Court assumes the following alleged facts in the FAC as true.[1]

**1.    Events Before October 18, 2005.**

Plaintiff was assaulted, stabbed and hospitalized in August 2003.  FAC at 13.  But Plaintiff does not identify who stabbed or assaulted him, nor implicates any Defendants in the matter.  *Id.*  As with the original complaint, Plaintiff does not appear to sue over this incident.

In the days following the incident with Sergeant Galban on September 15, 2005, various prison officials–including some not named as defendants–refused to process Plaintiff's complaint against Sergeant Galban.  FAC at 16-20.  Plaintiff requested a full Institution Classification Committee (ICC) hearing to discuss the incident.  FAC at 16.  He complains of correctional officers crafting false rules violation reports during this period.  *See, e.g.,* FAC at 21.  Also during this time Plaintiff was placed in the "hole" (administrative segregation).  FAC at 17.

---

[1]In a Rule 12(b)(6) motion to dismiss, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

1    Plaintiff was transferred back to the general population on September 29, 2005, where he was
2    ridiculed and threatened.  FAC at 22-25.  The threats and retaliation caused him permanent
3    psychological trauma and suffering, mental stress disorder and a nervous breakdown.  FAC at 23.

4    On September 30, 2005, defendant Roberts refused to take Plaintiff's statement regarding his
5    complaint against Sergeant Galban.  FAC at 24.  Plaintiff appeared before the ICC again on October 6,
6    2005.  FAC at 25.  The ICC was hostile toward Plaintiff and refused to document or acknowledge the
7    circumstances of his complaint.  FAC at 25.  That day, defendant Whitman directed the drafting of a
8    false rules violation report that falsely accused Plaintiff of refusing to leave administrative segregation
9    on September 29, 2005.  FAC at 26.  The rules violation report was executed and delivered to Plaintiff
10   on October 7, 2005.  FAC at 26.

11   On October 11, 2005, Plaintiff obtained a 602 administrative grievance form from the prison
12   library.  FAC at 26.

13   Plaintiff received his fourth placement notice for administrative segregation on October 11,
14   2005.  FAC at 26.  He said defendant Whitman wrote the notice in retaliation for Plaintiff obtaining
15   forms 1858 and 602 from the law library earlier that day.  FAC at 26.

16   At another ICC hearing on October 14, 2005, Plaintiff was unduly accused of several rule
17   violations and threatened with being deemed a program failure.  FAC at 27.

18          **2.      Submission of Complaint.**

19   On October 18, 2005, defendant Rutledge came to investigate Plaintiff's complaint against
20   Sergeant Galban.  FAC at 26-27.  Plaintiff says he gave Rutledge a handwritten complaint that day.
21   FAC at 27.  Plaintiff never specifies whether the complaint was on the 602 form he had acquired.  The
22   complaint was never processed.  FAC at 28-29.

23   Many of Plaintiff's allegations throughout the FAC allege that Defendants thwarted his attempts
24   to follow up with or prosecute his written complaint.

25          **3.      Events After October 18, 2005.**

26   Certain prison officials, including some not named as defendants, altered some of Plaintiff's
27   rules violation reports.  FAC at 21-22.  Plaintiff did not learn of these acts until November 3, 2005.
28   FAC at 21.

4

Plaintiff appeared before the ICC on December 8, 2005. He told them that any reports of rule violations were written in retaliation for inquiring about the status of the complaint he gave to defendant Rutledge on October 18, 2005. FAC at 29-30. Plaintiff's complaint regarding Sergeant Galban was ignored and he was placed one step closer to being "deemed a program failure." FAC at 30.

On December 14, 2005, Lieutenant Stratton told Plaintiff he was investigating the complaint against Sergeant Galban, and that he would send Plaintiff a copy of the results of his investigation. FAC at 30-31. Plaintiff appeared before the ICC on December 15, 2005. FAC at 31. Defendant Bourland "pretended" to read from a piece of paper that allegedly reported the results of Stratton's investigation and the finding of no misconduct. FAC at 31. Plaintiff saw the paper Bourland was referring to and thought it was actually a blank sheet. FAC at 31. Plaintiff eventually saw the results of Stratton's investigation and believes the papers are false and purposefully misrepresented the actual circumstances. FAC at 38.

Plaintiff alleges that after the ICC hearing Defendants transferred him "to Facility C in order to provide Sergeant Galban with easier access to Plaintiff." FAC at 32, 34. The transfer, however, apparently did not occur. On December 28, 2005 Plaintiff "was issued an administrative segregation unit placement notice despite never having left." FAC at 32, 34.

Within four days of the December 15 hearing, Plaintiff submitted additional grievances–including one mailed to the Director of Corrections in Sacramento–complaining about (1) the conspiracy to set Plaintiff up; (2) Sergeant Galban's sexual misconduct; (3) Defendants' refusal to receive, file or record Plaintiff's complaints; and (4) Defendants' issuance of false rules violations reports. FAC at 33-34.

At another ICC hearing on December 29, 2005, Plaintiff was threatened with being placed for two years minimum in the Security Housing Unit (SHU) unless he stopped submitting complaints about Sergeant Galban. FAC at 34. After the hearing, Plaintiff was given a contrived, backdated rules violation report by a non-defendant written in retaliation for his complaints. FAC at 35. Plaintiff was unjustly found guilty of this rules violation report on January 23, 2006. FAC at 37.

In February 2006, in retaliation for his complaint against Galban, Defendants caused guards to send dangerous and aggressive inmates to Plaintiff's cell door so they could terrorize him. FAC at 39.

1   These events emotionally traumatized Plaintiff to the point of insanity.  FAC at 40.

2          On June 12, 2007, a non-defendant correctional officer twisted Plaintiff's arm and threatened

3   him to not file an opposition to Defendants' first motion to dismiss filed in this case or to file complaints

4   against any other correctional officer.  FAC at 41.  The officer threatened Plaintiff 12 other times over

5   the next month.  FAC at 41.  Then, in retaliation for filing his opposition to the first motion to dismiss,

6   Plaintiff was transferred to the SHU in Pelican Bay State Prison.  FAC at 42.

7          **4.     Conspiracy Allegations.**

8          Plaintiff alleges each Defendant is a member of the Green Wall prison guard gang and has

9   entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff.  FAC at 45-56.

10  He alleges Defendants acted "in a deliberate and calculated campaign of intimidation, threat, collusion,

11  complicity, deceit, false record production."  FAC at 46.  Specifically, he alleges they organized the

12  production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation

13  and assault, and–with deliberate indifference to Plaintiff's safety–conspired to injure and/or murder him

14  by using "pencil whipping" techniques and assenting to cell assignments that exposed Plaintiff to

15  substantial risk of injury.  FAC at 45-46, 47-51.

16         **5.     Claims Against the CDCR.**

17         Plaintiff renews his claims against the CDCR.  FAC at 9.  He alleges the CDCR engages in

18  coverups of interdepartmental practices and retaliated against Plaintiff.  FAC at 53-54.

19         **6.     Plaintiff's Injuries.**

20         Plaintiff alleges–though not in relation to any specific claim–that he suffered physical injury in

21  the form of "permanent impairment of ability, bone fracture permanent disfigurement and continuing

22  physical and emotional pain and suffering."  FAC at 57.  He claims Defendants' evil motives

23  exacerbated his emotional pain and suffering, which includes "permanent stress disorder, extreme

24  anxiety, panic attacks, uncontrollable physical tremors, intermittent convulsive muscle contractions,

25  hyperventilation and social phobia."  FAC at 57-58.

26         **7.     Plaintiff's Attempt to Substitute In Defendants.**

27         Plaintiff alleges the unidentified Defendants are members of the Green Wall prison gang.  FAC

28  at 52.  He then tries to amend his complaint to also include these correctional officers as Defendants:

Galban, Keener, Reynolds, German, Sanchez, Catlett, Heuy, Imada, Sanders, Malcomb, Colio, Trujillo and Pagaza for being complicit in the conspiracy to manipulate Plaintiff's cell assignments to cause him harm. FAC at 55. Plaintiff does not allege specific actions by these Defendants nor relates them to any specific claim.

Plaintiff also attempts to add Deputy Director T. Schwartz and Classification Services Chief E. Arnold for transferring him to the SHU in Pelican Bay State Prison in retaliation for exercising his first amendment rights. FAC at 56.

**8.    Prayer for Relief.**

Plaintiff requests this relief: a declaration that Defendants' acts and omissions violated Plaintiff's rights; nominal damages in the amount of $1.00; compensatory damages in the amount of $10,000.00 against each Defendant; punitive damages in the amount of $10,000.00 against each Defendant; and costs. FAC at 61. He also seeks a preliminary and permanent injunction ordering Defendants to, essentially, stop fabricating papers and allegations against Plaintiff, stop exposing Plaintiff to dangerous or violent inmates in a non-general population housing unit, refrain from retaliatory actions, expunge any negative entries in Plaintiff's record, and instill a plan where the CDCR itself no longer directly receives complaints against any CDCR employees. FAC at 61-63.

**DISCUSSION**

**I.    Eleventh Amendment.**

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir. 1989) (internal quotations omitted). Nor does it bar damages actions against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). The Eleventh Amendment prohibits only damages actions against the "official's office"–actions that are in reality suits against the state itself–rather than against its individuals. *See id*. at 26; *Will*, 491 U.S. at 71; *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

Here, Plaintiff sued Defendants in their individual and official capacities for both money

7

1    damages and injunctive and declaratory relief.  FAC at 4, 61.  Because of the bar on damages actions

2    against individuals acting in their official capacities, this Court **RECOMMENDS** that Defendants'

3    motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be

4    **GRANTED**.

5    **II.    Exhaustion of Administrative Remedies.**

6            **A.    The PLRA**.

7            Exhaustion is a prerequisite to bringing suit under the PLRA.  42 U.S.C. § 1997e(a); *Porter v.*

8    *Nussle*, 534 U.S. 516, 524 (2002); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005).  In a

9    non-enumerated Rule 12(b)[2] motion to dismiss for failure to exhaust administrative remedies,

10   defendants "have the burden of raising and proving exhaustion." *Wyatt v. Terhune*, 315 F.3d 1108, 1119

11   (9th Cir. 2003).  Defendant, and not plaintiff, bears the burden of proving the plaintiff had available

12   administrative remedies that he or she did not utilize.  *Id.*

13           To show failure to exhaust, defendants may go outside the pleadings and submit supporting

14   affidavits or declarations.  *Id.*  The plaintiff, however, must be provided an opportunity to develop a

15   record to refute defendants' prima facie showing of non-exhaustion.  *Id.* at 1120 n.14.  In a non-

16   enumerated Rule 12(b) motion to dismiss, the court may look at both parties' submissions outside the

17   pleadings to resolve factual issues regarding exhaustion.  *Id.*

18           The PLRA requires that a plaintiff exhaust only "available" administrative remedies.  42 U.S.

19   § 1997(e)(a).  For example, if an inmate's appeal is granted at a lower level, the inmate need not appeal

20   because there is nothing left to exhaust.  *See  Brady v. Attygala*, 196 F.Supp.2d 1016, 1022-23 (C.D.

21   Cal. 2002) (finding further exhaustion not required where appeal was granted at the second level);

22   *Gomez v. Winslow*, 177 F.Supp.2d 977, 985 (N.D. Cal. 2001) (allowing an inmate to file suit where he

23   had "won" his inmate appeal by receiving a "partial grant" at the second level).  Also, refusing to give

24   an inmate grievance forms could raise the inference the prisoner "exhausted" his administrative

25   remedies.  *See Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003) (reversing a district court's dismissal

26   of a section 1983 case because it did not consider Plaintiff's allegation that prison officials refused to

27

28           [2]Unless otherwise noted, all future references to "Rule(s)" reference the Federal Rules of Civil
     Procedure.

1  provide him with the grievance forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (concluding

2  that any remedy prison officials prevent a prisoner from utilizing is not an "available" remedy as section

3  1997(e)(a) defines that term).

4         **B.    The Exhaustion Process.**

5      "Any inmate . . . may appeal any departmental decision, action, condition, or policy perceived by

6  those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 § 3084.1(a).  An inmate

7  must complete these steps to exhaust at the administrative level: (1) attempt to informally resolve the

8  problem with the staff member involved, *Id.* at § 3084.5(a); (2) submit a grievance on the CDCR inmate

9  602 form, *Id.* at § 3084.5(b); (3) appeal to the institution head or his/her designee for a second level of

10  review, *Id.* at § 3084.5(c); and (4) appeal to the Director of CDCR or his/her designee for a third and

11  final level of review, Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan*, 355

12  F.Supp.2d 1155, 1161 (S.D.Cal. 2004).  Prisoners must submit their appeal within 15 working days of

13  the event or lower decision being appealed.  Cal. Code Regs. tit. 15 § 3084.6(c).

14      To properly exhaust, a prisoner must complete the administrative review process according to

15  the applicable rules, including meeting deadlines and complying with other critical procedural rules.

16  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  If a prisoner concedes that he or she did not exhaust, that

17  concession is a valid ground for dismissal so long as no exception to exhaustion applies.  *Wyatt*, 315

18  F.3d at 1120.

19      **C.    Plaintiff's Attempt to Exhaust.**

20      In the original complaint, Plaintiff alleged he submitted a complaint regarding Sergeant Galban's

21  conduct but that the complaint was never processed.  In their first motion to dismiss, Defendants

22  presented evidence that Plaintiff did not submit a 602 form regarding Sergeant Galban's alleged

23  misconduct or Defendants' subsequent alleged misconduct.  *See* Edwards Supp'l Decl. ¶ 7, Grannis

24  Supp'l Decl. ¶¶ 4-5.  But Defendants left unexplained other issues regarding exhaustion.  First,

25  Defendants did not refute the allegation they thwarted Plaintiff's efforts to file his administrative

26  complaint.  Second, they did not explain how– if no complaints were received–they learned of Plaintiff's

27  complaint against Sergeant Galban and sent Lieutenant Stratton to investigate it.  Mar. 28 Order, p.8,

28  ll.24-26.  The Court denied without prejudice Defendants' motion to dismiss for failure to exhaust

because Defendants did not meet their burden of showing non-exhaustion.  Mar. 28 Order, pp.8-10.

Now, the remaining questions regarding exhaustion are: (1) whether the complaint Lieutenant Stratton investigated satisfied the administrative requirements against the Defendants; and (2) whether Defendants made the required administrative remedies unavailable to Plaintiff.

### 1.    *Lieutenant Stratton's Investigation of Plaintiff's Complaint.*

Defendants submit new evidence in this motion to dismiss the FAC to rebut Plaintiff's assertion that he submitted a written complaint regarding Sergeant Galban's conduct.  Most relevant, they bring forth the Declaration of Lieutenant Stratton, who explains he was investigating a verbal–and not a written–complaint regarding the alleged incident with Sergeant Galban.  On December 14, 2005, Lieutenant Stratton, at the direction of Captain Roberts, interviewed Plaintiff regarding his verbal allegations about the incident with Sergeant Galban.  Stratton Decl. ¶ 3.  At the time, no paper documentation supported Plaintiff's claims.  *Id.*  During the interview Stratton advised Plaintiff of the CDCR appeals process and how to properly use the 602 form.  *Id.*  After the interview, Stratton recommended a single-cell placement and a mental health review for Plaintiff.  Stratton Decl. ¶ 4; *see* FAC attachment pp.25-26.

Next, Plaintiff sent letters to the CDCR Director on December 15 and December 18, 2005 claiming he submitted a citizen's complaint to Sergeant Rutledge in October 2005.  Stratton Decl. ¶ 5, Ex. C.  The CDCR Director re-directed the letters to Calipatria's warden, who then tasked Stratton with conducting a fact-finding review into Plaintiff's complaints.  Stratton Decl. ¶¶ 5-6, Ex. C.  While Stratton did not disclose the full report of that investigation to this Court because of its confidential nature, he shares these specific results from his fact-finding review:

> Andrews did not file a CDCR Form 602 related to his allegations against Sergeant Galvan, or against other staff for their alleged refusal to process his complaints of staff misconduct.  I know this for three reasons.  First, my confidential reports do not contain any notation indicating an Administrative Appeal Log Number associated with the underlying allegations.  It is my practice and custom to record the corresponding Administrative Appeal Log Number for each administrative appeal I am assigned to investigate.  The lack of an Administrative Appeal Log Number in my confidential reports indicates that Inmate Andrews did not file a CDCR Form 602 to advance these allegations.  Second, Inmate Andrews' own hand-written documentation, in his letter to the Director of CDCR, dated September 15, 2005, shows that he alleges he submitted a citizen's complaint, reference in the California Code of Regulations, Title 15, section 3391(d), to Sergeant Rutledge, rather than a CDCR Form 602.

1

2   Third, as part of my fact-finding review, I contacted H. Fasolo, then the
    Appeals Coordinator at Calipatria, who informed me that although Inmate
    Andrews had previously made use of the administrative appeals process,
3   he had not filed any administrative appeal regarding his allegations against
    Sergeant Galvan or other prison officials related to the alleged
    misconduct.

4   Stratton Decl. ¶ 6.

5       Plaintiff rebuts Stratton's assertions.  While he acknowledges that Stratton interviewed him on

6   December 14, Plaintiff says the interview occurred based on previously-submitted written, and not

7   verbal, complaints.  Andrews Decl., p.2.  The next day, Plaintiff appeared before the ICC and learned

8   the investigation of his complaints was completed on December 14.  *Id.*

9       Defendants submit two other declarations in further support of their argument that Stratton

10  investigated a verbal, non-602 form complaint.  First, Sergeant Rutledge does not ever remember

11  Plaintiff or any inmate presenting him with a 602 form, or any other written complaint, alleging that

12  another sergeant committed sexual assault.  Rutledge Decl. ¶ 2.  If Rutledge had received a written

13  complaint, he would have forwarded it to his lieutenant or captain for investigation.  Rutledge Decl. ¶ 3.

14  Further, it is not unusual for prison officials to investigate allegations of staff misconduct even when

15  those complaints are not submitted on the required 602 form.  Supp. Grannis Decl. ¶ 6.  A complaint not

16  presented on the required form may be investigated where they allege serious violations of prison

17  procedures and regulations and contain sufficient detail to be investigated.  *Id.*

18      Investigating a non-602 form complaint does not supplant the required administrative exhaustion

19  process.  *Id.*  First, the CDCR Department Operations Manual § 54100.25.1 requires inmates to use the

20  602 form even when allegations of staff misconduct are being separately investigated.  *Id.*  Second,

21  inmates are routinely advised during the investigation that they have the right to, and should, pursue the

22  administrative grievance process so that they can properly advance their claims.  *Id.*  Finally, staff

23  complaints investigated outside the administrative appeals process rarely go beyond the institution

24  where they arise.  *Id.*

25      The Court finds that Defendants have presented sufficient evidence to explain how Lieutenant

26  Stratton came to investigate Plaintiff's complaint without Plaintiff's submission of a 602 form.  The

27  newly-submitted Stratton Declaration complements the initial Declarations of Grannis, the Chief of the

28  Inmate Appeals Branch, and Edwards, the Appeals Coordinator at Calipatria.  These declarations

11

1   revealed (1) Plaintiff did not submit a Third Level inmate appeal to the CDCR office against any of the

2   defendants in this lawsuit, or against any prison officer or official concerning any staff conspiracy to

3   cover up staff misconduct (Grannis Decl. ¶¶ 7, 8, 10); and (2) after a search in the Inmate/Parolee

4   Appeals Tracking System for all appeals Plaintiff filed from November 1, 2002 to the date of the initial

5   complaint, no appeal was submitted against defendants Whitman, Janda, Ochoa, Butler or Rutledge, or

6   against any prison officer or official concerning any staff conspiracy to cover up staff misconduct

7   (Edwards Decl. ¶¶ 4, 5).  Further, in a supplemental declaration, Edwards explains the subjects of the

8   nine appeals that Plaintiff filed at the second level of formal appeal, describes Plaintiff's letter to the

9   Office of the Director of the CDCR relating to a citizen's complaint Plaintiff allegedly filed against

10   Calipatria prison staff,[3] and affirms Defendants did not locate any appeals alleging that Sergeant Galban

11   sexually assaulted Plaintiff or otherwise acted inappropriately toward him.  Edwards Supp. Decl. ¶¶ 4-7.

12         The totality of the new plus the previously-submitted evidence provided together in this renewed

13   motion to dismiss leads this Court to conclude that Plaintiff did not submit the required 602 form as the

14   administrative grievance process requires.  Therefore, Plaintiff could not have exhausted any of the

15   claims in this lawsuit, unless exhaustion was made unavailable to Plaintiff.

16         **2.**     *Whether Defendants Made Administrative Remedies Unavailable.*

17         Plaintiff alleges that on October 18, 2005, he gave Sergeant Rutledge a written complaint that

18   Defendants never processed.  At issue is whether Defendants thwarted Plaintiff's efforts to file that

19   complaint.

20         Even if the Court assumes that Plaintiff alleges the complaint he submitted was on a 602 form,

21   Defendants presented evidence that they never received it.  Sergeant Rutledge explained that he never

22   received a complaint from Plaintiff regarding a prison official's sexual misconduct.  Rutledge Decl. ¶¶

23   2-3.  Even if Plaintiff had submitted a 602 form complaint to Rutledge, by at least December 14, 2005

24   Plaintiff was on notice the complaint was never received or processed.  First, he never received a 602

25   form in return informing him about proceeding to the next level.  Second, Lieutenant Stratton told

26   Plaintiff on December 14 there was no written record of his complaint and advised him to comply with

27

28         [3]Only non-inmates may file a citizen's complaint.  *See* 15 Cal. Code Regs. § 3391(b), (c). Therefore, Plaintiff's allegation that he filed a citizen's complaint could not in any way be construed to supplant the required administrative grievance process that employs the 602 form.

1  the administrative grievance process and how to properly use the 602 form.  Stratton ¶ 3.  Third,

2  Plaintiff was aware of the administrative grievance process during this relevant time, as he submitted

3  three other  administrative appeals from November to December 2005.  Edwards Supp. Decl. ¶¶

4  4(b),(c),(d).

5        Finally, Plaintiff appears to claim that one of the administrative appeals he advanced through all

6  three formal levels of review satisfies the exhaustion requirement here.  *See* Director's Level Decision,

7  FAC attachment p.2.  Plaintiff's administrative complaint for Log No. CAL 06-01961 related to Plaintiff

8  being written-up for a rules violation for his refusal to accept a cellmate.  *Id.*  While in that appeal

9  Plaintiff complained about staff manipulating Plaintiff's cell placements so that he would be with

10  inmates who would attack him at a staff member's direction, that allegation alone is not sufficiently tied

11  to Plaintiff's over-arching claim at the root of the FAC - that Sergeant Galban sexually assaulted

12  Plaintiff in 2005 and the Calipatria prison staff prevented him from filing a complaint regarding that

13  sexual misconduct.

14        Though the complaint about staff manipulation may relate to some of Plaintiff's conspiracy

15  claims in the FAC, those FAC claims appear to tie together to a conspiracy against Plaintiff *in*

16  *retaliation* for his filing, or attempting to file, a complaint against Sergeant Galban.  But in the

17  exhausted appeal, Plaintiff did not allege any sexual assault or attempts to thwart Plaintiff's efforts to

18  file a complaint regarding Sergeant Galban.  Neither did Plaintiff mention a conspiracy.  Finally,

19  Plaintiff did not receive a final decision regarding this appeal until November 30, 2006.  Grannis Supp.

20  Decl. ¶ 4(a).  Plaintiff had already filed this lawsuit on November 3, 2006.  Therefore, even if the

21  administrative appeal could be construed as exhausting Plaintiff's claims–which is not the case–Plaintiff

22  brought the lawsuit prior to exhausting that claim.

23        For the foregoing reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss

24  based on exhausted be **GRANTED**.

25  **III.**    **Rule 12(b)(6) Motion.**

26        Defendants seek to dismiss Plaintiff's FAC for failure to state a claim on these grounds:  (1) the

27  first amendment retaliation claims are barred by the favorable termination doctrine; (2) Plaintiff fails to

28  allege a lack of probable cause in his retaliation claim; (3) Plaintiff does not allege any eighth

1   amendment cruel and unusual punishment claims; and (4) Plaintiff does not state a fourteenth

2   amendment equal protection claim.

3        **A.    Legal Standard.**

4        A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's claims.  *Navarro v.*

5   *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court must assume all material factual allegations of the

6   complaint as true and all reasonable inferences to be drawn from them.  *Cahill v. Liberty Mut. Ins. Co.*,

7   80 F.3d 336, 338 (9th Cir. 1996). Dismissal is proper only where there are insufficient facts to support a

8   cognizable legal theory. *Navarro*, 250 F.3d at 732 (citation omitted).

9        **B.    First Amendment Retaliation Claim.**

10        Plaintiff alleges Defendants retaliated against him for attempting to prosecute his complaint

11   regarding the alleged incident with Sergeant Galban.  He alleges Defendants manufactured false

12   disciplinary charges and rules violation reports against him, which led to Plaintiff's confinement in

13   administrative segregation.  In the initial Report and Recommendation, this Court recommended finding

14   that Plaintiff adequately stated a first amendment retaliation claim.  Defendants objected to this finding,

15   arguing that Plaintiff failed to show his disciplinary convictions were invalid, thereby not fulfilling the

16   requirements of the favorable determination doctrine under *Heck v. Humphrey*, 512 U.S. 477 (1994).

17   They also objected that Plaintiff failed to allege the absence of probable cause under *Hartman v. Moore*,

18   547 U.S. 250 (2006).  The district judge sustained these objections and dismissed Plaintiff's first

19   amendment claims with leave to amend.  Mar. 28 Order, p.6.  The Court specifically directed Plaintiff to

20   respond to these two objections.  *Id.*

21        **1.    *Favorable Termination Doctrine.***

22        The "favorable termination" requirement applies to civil rights actions filed against state actors

23   under 42 U.S.C. § 1983.  *Heck*, 512 U.S. at 483-484.  The doctrine bars a plaintiff from suing, under any

24   constitutional theory, "for allegedly unconstitutional conviction or imprisonment, or for other harm

25   caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the

26   plaintiff first "proves that the conviction or sentence has been reversed on direct appeal, expunged by

27   executive order, declared invalid by a state tribunal authorized to make such a determination, or called

28   into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 487.  The favorable

1  determination doctrine may also apply to an inmate's claims that challenge a disciplinary proceeding

2  that has affected the fact or duration of the inmate's confinement. *Edwards v. Balisok*, 520 U.S. 641,

3  646-647 (1997). But insofar as the disciplinary action affects only a condition of confinement–which

4  includes any deprivation that does not affect the fact or duration of a sentence–the favorable termination

5  doctrine does apply. *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (finding the favorable

6  termination doctrine did not apply to a challenge to a prison disciplinary sanction of administrative

7  segregation).

8      Here, Plaintiff alleges he suffered prison disciplinary convictions in retaliation for attempting to

9  exercise a constitutional right. As a result of these convictions, Defendants imposed the punishment of

10 sending Plaintiff to administrative segregation. In the FAC Plaintiff never alleges that the fact or

11 duration of his sentence was affected. Defendants generally argue that the rules violation convictions

12 "resulted in forfeiture of behavioral credits and thus impacted his term of incarceration." Reply, p.4,

13 ll.26-28. Defendants, however, do not cite to any specific reports that show Plaintiff lost good-time

14 credits. And upon reviewing the attachments to Plaintiff's complaint, this Court has not found an

15 express forfeiture of behavioral credits. *See, e.g.,* FAC Attachment p.4 (based on Plaintiff's continued

16 refusal to share a cell with another inmate the ICC recommended Plaintiff be sent to the SHU); FAC

17 Attachment p.12 (stating that as a result of being placed in administrative segregation Plaintiff's credit

18 earning was "subject to change").

19     Plaintiff has not plead, Defendants have not pointed out, and the Court has not found, an express

20 revocation or impact on the length of Plaintiff's sentence due to his placement in administrative

21 segregation. Because Plaintiff alleges only a deprivation of the conditions of his confinement, as

22 opposed to the duration of his sentence, the favorable termination doctrine does not apply.

23              **2.    *Absence of Probable Cause.***

24     In *Hartman*, the Supreme Court held that, under either a *Bivens* or a section 1983 action based

25 on a malicious or wrongful criminal prosecution, the plaintiff must plead and show the absence of

26 probable cause for prosecuting the underlying criminal charges. *Hartman*, 547 U.S. at 252, 263-266.

27 Specifically, the plaintiff must show the absence of probable cause against criminal investigators for

28 inducing a prosecution in retaliation for protected speech. *Id.* This pleading element applies only to "a

1  particular subcategory of retaliation claims: retaliatory prosecution claims."  *Skoog v. County of*

2  *Clackamas*, 469 F.3d 1221, 1233 (9th Cir. 2006).

3         Defendants did not present, and this Court has not found, a Ninth Circuit case that applies the

4  lack of probable cause element to a retaliation claim in the prison disciplinary context.  Further, this

5  Court finds that imposing such a requirement in the prison context would probably be futile.  First,

6  Plaintiff already must prove that he suffered an "adverse action"–here, the rules violation reports–that

7  did not have a "legitimate correctional purpose" or advance any "legitimate correctional goal."  *Rhodes*

8  *v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005).  In other words, Plaintiff must prove that

9  Defendants launched their disciplinary proceedings to punish him for exercising his first amendment

10  right to file a complaint, that the proceedings had a "chilling effect" on him, and that Defendants had no

11  other legitimate purpose or goal in conducting those proceedings, so that their only purpose was to

12  squelch his free speech.  In practical terms, satisfying these elements under *Rhodes* essentially shows

13  there was no probable cause to launch the disciplinary proceedings.[4]

14         Based on the lack of authority before it, this Court declines to impose the additional element of

15  pleading lack of probable cause.  The requirement under *Hartman* applies to a particular subcategory of

16  criminal prosecutorial retaliation claims based on malicious or wrongful criminal prosecutions.  This

17  Court will not recommend applying that requirement to a general retaliation claim in the prison context.

18         In sum, the FAC adequately addresses Defendants' two objections.  First, Plaintiff never pleads

19  that the discipline imposed affected the length of his sentence, so the favorable termination doctrine

20  does not apply.  Second, Plaintiff does not allege that the prison disciplinary proceedings were, by

21  nature, malicious or wrongful criminal prosecutions, and this Court has not aware of any relevant

22  authority so stating.  Therefore, if the district court rejects this Court's recommendation to grant

23  Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants'

24  motion to dismiss Plaintiff's first amendment retaliation claims be **DENIED**.

25  C.    **Eighth Amendment Claims.**

26         Judge Burns' Order addressing the eighth amendment claims in the initial complaint broke down

27

28         [4]This Court has already addressed Plaintiff's satisfying the pleading requirements for a first amendment retaliation claim under *Rhodes*.  *See* Aug. 16, 2007 Rep. & Rec.

the claims between (1) those based on Defendants' transfer of Plaintiff back to the general population in 2006; (2) conspiracy claims against the named and Doe Defendants; and (3) Defendants' failure to protect Plaintiff from further attacks.

### 1.    *Claim Previously Dismissed with Prejudice.*

This Court has already dismissed, with prejudice, Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006.  Mar. 28 Order at 10.  Plaintiff could not have exhausted these claims because he alleges the acts took place long after he submitted a complaint.  Thus, these claims could not have been exhausted.  This Court **RECOMMENDS** that the district court **AFFIRM** its prior order that Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006 are **DISMISSED with prejudice**.

### 2.    *Conspiracy Claim.*

A plaintiff must plead conspiracy claims with enough specificity to put defendants on notice of the claims against them.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  Regarding the conspiracy claims in the initial complaint, Judge Burns found that Plaintiff did not allege any specific facts other than the existence of the Green Wall gang and Officer Galban's assault on him.  Mar. 28 Order, p.4.  He did not allege who conspired to attack him, how the conspiracy resulted in Officer Galban's attack, or that Officer Galban was a member of the gang.  *Id.*  Judge Burns found that no Defendant or potential Defendant had been given adequate notice of the conspiracy claims against them and dismissed those claims without prejudice.  *Id.* at 4-5.

In the FAC, Plaintiff alleges that each Defendant is a member of the Green Wall prison guard gang and has entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff.  FAC at 45-56.  More specifically, he alleges they organized the production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation and assault, and–with deliberate indifference to Plaintiff's safety–conspired to injure and/or murder him by using "pencil whipping" techniques and assenting to cell assignments that exposed Plaintiff to substantial risk of injury.  FAC at 45-46, 47-51.  Plaintiff attaches to the FAC the rules violation and investigatory reports that he alleges are false.  Plaintiff does not, however, provide any new details of any alleged conspiracy that resulted in Officer Galban's attack.

1    This Court finds that Plaintiff has not provided enough new details to sufficiently plead a

2    conspiracy by Defendants to violate Plaintiff's eighth amendment rights.  He does not allege who

3    specifically conspired to attack him or how the conspiracy resulted in Sergeant Galban's alleged assault.

4    He does not tie Sergeant Galban to the conspiracy.  He does not allege how the production of false

5    records and inmate intimidation resulted in him suffering from cruel and unusual punishment.  While he

6    says he suffered physical injury, he does not tie that injury to any specific claim or incident.  FAC at 57.

7    And through the FAC, the only injury he says he suffered was in 2003, related to an alleged stabbing by

8    inmate Smith.  Plaintiff, however, does not implicate any Defendants in the matter and does not appear

9    to sue over this incident.

10   Defendants, therefore, are not on notice of any events they participated in that caused any

11   physical injuries to Plaintiff.   Therefore, if the district court declines to dismiss this action based on

12   exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth

13   amendment claims based on a conspiracy be **GRANTED** and the claims be **DISMISSED with**

14   **prejudice**.

15                    **3.      *Failure to Protect Claim.***

16   The district judge found that Plaintiff did not adequately allege an eighth amendment claim for

17   Defendants' failure to protect Plaintiff from further attacks because Plaintiff did not allege any facts

18   showing there was any substantial risk after the attack by Galban, that Plaintiff was attacked again or

19   otherwise suffered other harm, or that Defendants actually inferred Plaintiff was at further risk.  Mar. 28

20   Order, p.5.  The Court gave Plaintiff leave to amend this claim.  *Id.*

21   A plaintiff may plead an eighth amendment claim for cruel and unusual punishment by alleging

22   failure to take reasonable measures to protect an inmate from serious risk to health and safety.  *See, e.g.*,

23   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner claiming such an eighth amendment violation

24   must show: (1) the deprivation he suffered was "objectively, sufficiently serious" (objective element);

25   and (2) the defendant possessed a sufficiently culpable state of mind (subjective element).  *Id.* at 834.

26   Where the claim is predicated upon the failure to protect, the deprivation is deemed to be sufficiently

27   serious if there was a substantial risk that the prisoner would suffer serious harm.  *Id.*  Regarding the

28   subjective element, a prison official can only be held liable if he (1) is aware of the facts from which he

1  could infer a substantial risk of serious harm, and (2) actually drew that inference.  *Id.* at 837.

2          Plaintiff first alleges he was transferred back to the general population on September 29, 2005,

3  where he was ridiculed and threatened.  FAC at 22-25.  The attachments to the FAC, however,

4  contradict this allegation.[5]  Further, Plaintiff alleges the threats and retaliation due to this move caused

5  him permanent psychological trauma and suffering, mental stress disorder and a nervous breakdown.

6  FAC at 23.  Even if the Court assumes the move back to the general population to be true, this general

7  allegation of harm does not amount to the required showing that Plaintiff suffered a deprivation that was

8  objectively, sufficiently serious or that Defendants possessed a culpable state of mind when they

9  transferred Plaintiff back to the general population.

10         On his second attempt at this eighth amendment claim, Plaintiff does not adequately allege he

11 suffered any harm that would rise to a deprivation of a constitutional right or that Defendants inferred he

12 was at risk of suffering such a deprivation.  If the district court declines to dismiss this action based on

13 exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth

14 amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice**.

15         **D.      Fourteenth Amendment Claims.**

16         Judge Burns dismissed Plaintiff's due process and equal protection claims with leave to amend.

17 Mar. 28 Order, p.10.  Plaintiff, however, did not reallege those claims.  He only generally alleges on one

18 page of the FAC that Defendants acted "for the purpose of denying Plaintiff the equal protection and due

19 process of law as contemplated in the fourteenth amendment."  FAC, p.3.  Plaintiff does not allege any

20 of the other elements required to plead such claims.  Therefore, if the district court declines to dismiss

21 this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss

22 Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the

23 claims be **DISMISSED with prejudice**.

24 **IV.     Remaining Issues.**

25         **A.      Qualified Immunity.**

26         State officials are protected from "liability for civil damages insofar as their conduct does not

27 ─────────────────────

28        [5]A report from the Departmental Review Board notes that it was not until September 19, 2006
   that Plaintiff was released from administrative segregation, and that he refused to leave it.  FAC
   Attachment, pp.4, 5.

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To analyze a qualified immunity claim, a court must first determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants violated the claimant's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is no, the analysis ends.  If, on the other hand, the answer is yes, the court must then consider whether the defendants are entitled to qualified immunity. *See id.*; *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002).  The second step requires determining "whether the right was clearly established." *Saucier*, 533 U.S. at 201.  The relevant inquiry focuses on "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208.  The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Here, Plaintiff has adequately alleged a first amendment claim.  During the time period of the alleged acts, an inmate's right to be free of retaliation for filling out an administrative grievance was clearly established by existing case law.  The question, however, of whether any or all of the Defendants could reasonably have believed that their conduct was lawful is more properly resolved on a motion for summary judgment or at trial, when Defendants are entitled to present evidence on their behalf and the Court may properly consider such evidence.  Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether any or all of the Defendants is entitled to qualified immunity as to the first amendment claim.  Further, if the district court adopts this Court's recommendation as to the exhaustion issue, then the question of qualified immunity becomes moot.  Therefore, the Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice**.

## B.     Claims Against the CDCR.

**AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED** with prejudice, per Judge Burns' Order of March 28, 2008 Order at 10.

/ / /

/ / /

**C.      Attempt to Amend the Complaint to Add Additional Defendants.**

To the extent on page 55 of the FAC Plaintiff intends to identify defendants previously sued as Does, or to add 20 new defendants, he was not granted permission to add those defendants.  *See* Mar. 28 Order, p.11 (granting leave only to amend claims and not to add new defendants).  Further, a review of the docket shows that Plaintiff has not served, and cannot serve, those proposed defendants within 120 days of filing the complaint, as required by Rule 4(m).  Finally, even if Plaintiff could add those new defendants, such an act would be futile because this Court recommends dismissing Plaintiff's FAC for failure to exhaust.  This Court **RECOMMENDS** that Plaintiff's attempt to add 20 new defendants to this action be **DENIED**.

**D.      Request to Charge Plaintiff with a Strike.**

Defendants again urge the Court to charge Plaintiff with a strike under 28 U.S.C. § 1915(g).  They argue Plaintiff filed the lawsuit to punish prison officials for their efforts to hold Plaintiff accountable for his refusal to accept a cellmate, and that it has created a tremendous amount of work for the Court and the Defendants.  They also argue that Plaintiff's false accusation that Defendants prevented him from exhausting his administrative remedies goes to the malicious nature of the lawsuit.

An inmate may be charged with a strike if a complaint is dismissed for being frivolous, malicious, or for failing to state a claim.  An inmate charged with three strikes cannot bring further civil rights actions.  28 U.S.C. § 1915(g).

This action appears to be Plaintiff's first section 1983 action to proceed in this Court.[6]  Upon reviewing the file in this case, Plaintiff's claim that he attempted to exhaust his administrative grievance, but was prevented from doing so, does not appear to rise to the level of maliciousness that Defendants claim.  And, there is no sufficient showing that Plaintiff intended to punish prison officials by bringing this suit.  Further, Defendants had the burden to prove the defense of non-exhaustion.  They did not do so in their first motion to dismiss, which is what brought this case to another round of briefing for a second motion to dismiss.  Considering all these facts, the Court **RECOMMENDS** that Defendants' request to charge Plaintiff with a strike be **DENIED**.

---

[6]In 2006 Plaintiff filed a different section 1983 action that the Court dismissed sua sponte for lack of proper venue.  *See Andrews v. Coyle*, 06cv2278 BEN (JMA).

06cv2447 LAB (NLS)

**E.     Plaintiff's Request for Judicial Notice.**

Plaintiff asks that this Court take judicial notice of 15 Cal. Code Reg. § 3401.5.  Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "A court shall take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c).  The Court **RECOMMENDS** that Plaintiff's request for judicial notice of 15 Cal. Code Reg. § 3401.5 be **GRANTED**, as its content is capable of accurate determination.

C<small>ONCLUSION</small>

For all of the above reasons, the Court **RECOMMENDS** the following:

1.     Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED**.

2.     Defendants' motion to dismiss based on exhausted be **GRANTED**.

3.     If the district court rejects this Court's recommendation to grant Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's first amendment retaliation claim be **DENIED**.

4.     **AFFIRM** that Plaintiff's eighth amendment claims based on Defendants transferring him back to the general population in 2006 are **DISMISSED with prejudice**, per Judge Burns' Order of March 28, 2008 Order at 10.

5.     If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim based on a conspiracy be **GRANTED** and the claim be **DISMISSED with prejudice**.

6.     If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice**.

7.     If the district court declines to dismiss this action based on exhaustion, this Court

22

**RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the claims be **DISMISSED with prejudice**.

8.    If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice**.

9.    **AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED with prejudice**, per Judge Burns' Order of March 28, 2008 Order at 10.

10.   Plaintiff's attempt to amend the complaint to add 20 new defendants to this action be **DENIED**.

11.   Defendants' request to charge Plaintiff with a strike be **DENIED**.

12.   Plaintiff's request for judicial notice of 15 Cal. Code Reg. § 3401.5 be **GRANTED**.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1)  to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than ***October 31, 2008*** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***November 10, 2008.***  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  October 8, 2008

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge

06cv2447 LAB (NLS)