# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RAYMOND ANDREWS,<br>CDC #t-67625,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>M.C. WHITMAN; G.J. JANDA; M.E. BOURLAND; T. OCHOA; C. BUTLER; W.C. ROBERTS; F. RUTLEDGE; CALIFORNIA DEPARTMENT OF CORRECTIONS,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 06-2447-LAB (NLS)<br><br>**ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATIONS;**<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATIONS;**<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; AND**<br><br>**ORDER OF DISMISSAL**<br><br>[Dkt. nos. 78, 94, 96] |

## I.     Procedural History

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, filed his original complaint in this civil rights action on November 3, 2006. Defendants moved to dismiss, and on March 28, 2008, the Court issued an order (the "Dismissal Order") dismissing certain claims with prejudice and others without prejudice.

The Dismissal Order dismissed with prejudice all claims against the California Department of Corrections and Rehabilitation ("CDCR") and Plaintiff's Eighth Amendment

claims that Defendants transferred him back into the general prison population in 2006. All other claims were dismissed without prejudice, and Plaintiff was permitted to file an amended complaint. The Dismissal Order also cautioned Plaintiff that he was not to add unexhausted or otherwise non-meritorious claims and that if he did so, they would be subject to *sua sponte* dismissal under 28 U.S.C. § 1915(a).

Plaintiff then filed his First Amended Complaint ("FAC"), and Defendants filed a motion to dismiss (the "Motion to Dismiss"). The FAC is 63 pages long, with an additional 62 pages of exhibits attached. Pursuant to 28 U.S.C. § 636 and Civil Local Rule 72.1(d), the Motion to Dismiss was referred to Magistrate Judge Nita L. Stormes for report and recommendation. On October 8, 2008, Judge Stormes issued her report and recommendation (the "R&R") finding Plaintiff had failed to exhaust his administrative remedies and recommending Defendants' Motion to Dismiss be granted on that basis or, in the alternative, because the FAC fails to state a claim. The R&R recommended not charging Plaintiff with a strike under 28 U.S.C. § 1915(g).

Defendants filed objections, requesting that the FAC be dismissed for failure to state a claim and charged with a strike. Plaintiff then filed a series of motions, including a "Motion to Strike the Defendants' Affirmative Defense of Failure to Exhaust Administrative Remedies," (Dkt. no. 94), an "Ex Parte Request to File a Second Amended Complaint," (Dkt. no. 96), and a "Motion to Strike the Defendants' Objection to the Report and Recommendation." (Dkt. no. 104). Because the first two of these motions go to the substance of the R&R, the Court construes them as objections to the R&R. The Court ruled separately on the third motion (Dkt. no. 104), which was based on matters not directly related to the R&R or the substance of the Motion to Dismiss. Plaintiff filed his objections to the R&R on December 12, 2008, and on December 19, 2008, he filed a reply to Defendants' objections.

**II.    Legal Standards**

A district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" on a

dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b).

In reviewing an R&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a de novo determination of the factual findings to which there are objections). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979). Objections must, however, be specific, not vague or generalized. *See* Fed. R. Civ. P. 72(b)(2) (requiring "specific" objections); *Palmisano v. Yates*, 2007 WL 2505565, slip op. at *2 (S.D.Cal. Aug. 31, 2007).

The Court has reviewed de novo the legal standards set forth in the R&R, and finds them to be correct. The Court will therefore apply the standards set forth there without again citing them at length here.

**III.   Screening**

Because Plaintiff is a prisoner and proceeding *in forma pauperis*, the Court is obligated pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c) to dismiss the FAC to the extent it is frivolous or malicious, seeks monetary relief against a Defendant who is immune, or fails to state a claim. As noted, the Dismissal Order dismissed with prejudice all claims against the CDCR. Without leave, Plaintiff has again named the CDCR as a Defendant. The Court therefore **REAFFIRMS** its previous dismissal of these claims and will not consider them further.

The FAC raises claims against Defendants in both their individual and official capacities (FAC at 4), and Defendants have raised Eleventh Amendment immunity. (Mem. in Supp. of Motion to Dismiss, 8:5–22.) The R&R recommends dismissing these claims to the extent Plaintiff seeks damages, and the Court agrees. *See Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 66, 71 (1989) (holding that the Eleventh Amendment bars damages actions against state officials acting in their official capacity).

**IV.     Exhaustion of Administrative Remedies**

   **A.     Requirements and Legal Standards**

Exhaustion of available administrative remedies is a prerequisite to bringing suit under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Claims must be exhausted before filing suit; exhaustion after filing suit will not suffice. *McKinney v. Carey*, 311 F.3d 1198, 1198 (9th Cir. 2002).

Defendants may raise this defense in a non-enumerated motion under Fed. R. Civ. P. 12(b), and bear the burden of raising and proving non-exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). To prevail, Defendants must show Plaintiff had available administrative remedies he did not utilize. *Id.* They may go beyond the pleadings and provide evidence to support their argument, but Plaintiff must be provided an opportunity to develop the record to refute Defendants' showing. *Id.* at 1120 n.14. The Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Id.* at 1119–20 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam)).

The exhaustion requirement takes on particular significance in this case because Defendants submitted evidence Plaintiff never properly exhausted <u>any</u> claims he now raises. The Court denied without prejudice Defendants' earlier motion to dismiss on the basis of non-exhaustion, finding they had not provided adequate details or evidence to refute Plaintiff's claim they thwarted his efforts to file his administrative complaint, or to explain how they were able to send Lt. Stratton to investigate Plaintiff's complaint against Sgt. Galban. In this renewed motion, Defendants again contend Plaintiff failed to properly exhaust his administrative remedies by pursuing an administrative complaint against Defendant Galban for allegedly assaulting Plaintiff, and against other Defendants for actions they allegedly took in the aftermath. As the Court explained in its Dismissal Order, Plaintiff could not have

/ / /

exhausted his administrative remedies for later alleged violations of his rights. (Dismissal Order at 7:1–27.)

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). In California, this means

> a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed. [15 Cal. Code Regs.] § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office. *Id.*, § 3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review, *id.*, § 3084.5(c), which is conducted by the institution head or designee. *Id*. § 3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, § 54100.11, "Levels of Review[.]"

*Nichols v. Logan*, 355 F. Supp. 2d 1155, 1161 (S.D.Cal. 2004).

Because a plaintiff must follow applicable regulations, using some alternative means or procedure to lodge or pursue a complaint does not satisfy exhaustion requirements. Under 15 Cal. Code Regs. § 3084.2 prisoners must use Form 602 to advance their grievances. The Cal. Dep't of Corrections Operations Manual, § 54100.25.1, requires use of the form even when allegations of staff misconduct are being separately investigated. (Grannis Suppl. Decl., ¶ 6.)

The Supreme Court has recognized this requirement may create harsh results, but has also emphasized the relative informality and simplicity of California's system, *Woodford*, 548 U.S. at 103, as well as the important concerns underlying the exhaustion requirement. *Porter*, 534 U.S. at 524–25.

Plaintiff need only exhaust <u>available</u> remedies, however. Any theoretically available remedies Defendants prevented him from pursuing, such as by withholding required forms or refusing to process forms, need not be exhausted. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding that remedies prisoner officials prevent a prisoner from utilizing are not "available" for § 1997e(a) purposes)).

### B. The R&R's Findings

The R&R focuses on Plaintiff's claim that Sgt. Galban sexually assaulted him and prison officials retaliated against him. Plaintiff claims he either exhausted these and other claims or filed them but was prevented from fully exhausting them, and that Lt. Stratton investigated them. As the R&R correctly points out, the questions now before the Court concerning exhaustion are 1) whether whatever complaint Lt. Stratton investigated satisfied the exhaustion requirement, and 2) whether Defendants prevented Plaintiff from utilizing administrative remedies.

Previously, Defendants submitted evidence Plaintiff never submitted a Form 602 complaining of sexual assault and retaliation. In the Motion to Dismiss, they again submit evidence, but also provide detailed explanation of what happened. The R&R reviews this evidence in great detail. (R&R, 10:6–12:15.) In essence, Defendants have presented evidence to show Plaintiff never submitted a Form 602 complaint, and Lt. Stratton was investigating a spoken, not written, complaint. (Stratton Decl. ¶¶ 3, 6.) They also present evidence to show charges of serious staff misconduct may be investigated even when not submitted on the required Form 602, but a separate investigation does not substitute for the normal appeal process. (Grannis Suppl. Decl. ¶ 6.) Plaintiff himself, when communicating with officials, described his complaint as a "citizen's complaint,"[1] not a 602 appeal or any equivalent term, and specifically cites 15 Cal. Code Regs. § 3391(d). (Stratton Decl. ¶ 5, Ex. C.)

Defendants have submitted evidence showing a search was made for all 602 appeals Plaintiff submitted from November 1, 2002 to November 3, 2006, the date the original complaint was filed in this matter. (Edwards Suppl. Decl., ¶ 4.) Most of the appeals were screened because Plaintiff had attempted to bypass steps in the appeals process or because of other procedural defects he could have remedied but never did. (*Id.*)

Two 602 appeals are of particular interest. First, on November 6, 2005 Plaintiff appealed procedural irregularities in the October 7, 2005 disciplinary hearing, of which he

---

[1] Regulations provide for the submission of citizens' complaints, 15 Cal. Code Regs. § 3391, but only by non-inmates.

1  said he was notified November 3, 2005. (Edwards Suppl. Decl., ¶ 4(c) and Ex. B.) Plaintiff's
2  description of the problem, set forth on the form, describes only failure to hold an adequate
3  hearing, appeals the finding of "guilty," and requests only the opportunity to appear and
4  present evidence at a new hearing. (*Id.*, Ex. B.)  The evidence shows this appeal was
5  granted on April 10, 2006 and Plaintiff was provided with a new hearing as he requested.
6  (*Id.*)  The evidence indicates he lodged no appeal concerning the new hearing.  This
7  particular 602 appeal would have put prison officials on notice of a possible procedural due
8  process violation, but as the R&R correctly noted, the FAC does not raise such a claim.
9  (R&R at 19:16–23; *see also* FAC at 25–26 (discussing events of early October, 2005), 29
10 (briefly discussing events of November, 2005).)  The appeal did not identify the basis for any
11 claim raised in the FAC.  *See Griffin v. Arpaio*, ___ F.3d ___, 2009 WL 539982, slip op. at
12 *2–*3 (9th Cir. Mar. 5, 2009) (explaining that, to exhaust administrative remedies, a grievance
13 must contain sufficient details to put prison officials on notice of the nature of the wrong for
14 which redress is sought).

15     Second, Plaintiff maintained to the Director's Level a 602 appeal complaining against
16 unspecified officials concerning a different disciplinary proceeding.  The disciplinary
17 proceeding concerned charges of refusing a cellmate, and began May 10, 2006.  The
18 appeal, which was denied at the Director's Level, was not exhausted until November 30,
19 2006, nearly a month after Plaintiff filed this action. (Edwards Suppl. Decl. ¶ 4(g); Grannis
20 Decl. ¶ 7(a).)  Also, the R&R correctly notes this appeal would not have put Defendants on
21 notice regarding allegations that Sgt. Galban sexually assaulted Plaintiff and staff prevented
22 him from filing a complaint about it.  (R&R, 13:5–22.)

23     The evidence therefore shows no appeals that would have put prison officials on
24 notice of the grievances underlying claims raised in the FAC, either those involving Sgt.
25 Galban, or official retaliation, or any other claim. (Edwards Suppl. Decl. ¶ 4.)  Furthermore,
26 the evidence shows Plaintiff was able to submit multiple 602 appeals, which were considered
27 and, in one case, granted.  (*Id.*)
28 / / /

The R&R also credited declarations showing Plaintiff never submitted a Third Level appeal against any Defendant. (R&R, 12:1–3.) Thus, even if Plaintiff had submitted an appeal on a Form 602 concerning his claims raised in the FAC, the R&R found he had not pursued it through all required levels.

The R&R found administrative remedies were available. On its face, the evidence indicates the screening out of certain appeals was not arbitrary, contrary to applicable rules, or designed to thwart Plaintiff's ability to bring or maintain appeals. (Edwards Suppl. Decl. ¶ 4.) Plaintiff says officials initially refused to provide him with a blank Form 602 so he could file a grievance and initially refused to allow him to file a grievance other than on a Form 602. (FAC at 17, 20, 24–25.) The FAC makes clear, however, that Plaintiff obtained this form from the prison library. (*Id.* at 26.)

Thus, assuming the R&R's findings of facts are correct, Plaintiff had administrative remedies available for claims he raises in the FAC but failed to exhaust them as to any claim raised in the FAC.

### C.    Plaintiff's Objections to the R&R

As discussed above, Plaintiff filed extensive and detailed objections to the R&R, most of which are irrelevant to the issue of exhaustion, and many of which are irrelevant to any material issue. The objections go line by line through the R&R, critiquing each sentence or paragraph. In large part, the objections find fault with the level of factual and legal detail provided in the R&R, or quibble baselessly with its wording. The Court will not address these objections, which have no bearing on the outcome of this case and which are thus moot. In only a few instances, which are addressed below, are Plaintiff's objections relevant to the issue of exhaustion of administrative remedies.

#### 1.    Objection: The R&R Applied the Wrong Legal Standards

Plaintiff lodges two general objections regarding the standards the R&R applied. First, he argues the R&R was bound to apply the Rule 12(b)(6) standard to Defendants' defense of non-exhaustion by accepting his pleadings as true and drawing inferences in his

/ / /

favor rather than considering evidence. (*See, e.g.*, Obj. to R&R at 13, 29 ("The R&R assumes a matter in dispute.").)

As discussed above, this objection relies on the wrong standard. In deciding a non-enumerated Rule 12 motion to dismiss for failure to exhaust available administrative remedies, the Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119–20. Defendant has been afforded an opportunity to develop the record, and has done so by pointing to and discussing extensive documentation to support his arguments. *Id.* at 1120 n.14.

Second, Plaintiff argues Defendants were required to prove non-exhaustion by clear and convincing evidence (Obj. to R&R at 35–36 ("They are required to establish by clear and convincing proof . . . ."); 44 ("The Defendants have not submitted clear and convincing proof of unexhausted available remedies and this is what is required in order to satisfy the allocated burden of proof.")

It would be extraordinary if defendants in civil actions were required to prove the non-occurrence of an event by clear and convincing evidence, especially because weightier matters such as liability and jurisdiction need only be proved by a preponderance of the evidence. Thus, not surprisingly, the R&R did not state what standard it was applying. The correct standard is, however, that Defendants must prove non-exhaustion of administrative remedies by a preponderance of the evidence. *See Kelley v. DeMasi*, 2008 WL 4298475, slip op. at *4 (E.D.Mich, Sept. 18, 2008) (citing *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 5 (D.D.C. 2008)). *See also Dale v. Poston*, 548 F.3d 563, 564 (7th Cir. 2008) (noting with approval that jury was asked to determine whether defendants in PLRA case had proven non-exhaustion by a preponderance of the evidence). The R&R did not err.

These objections are therefore **OVERRULED**.

### 2. Objection: The R&R Relied on Inadmissible Evidence

Plaintiff argues in various places that the R&R relied on incompetent evidence submitted by Defendants. He contends Lt. Stratton would have had no personal knowledge of the matters attested to in his declaration, such as who submitted which reports or who

received various letters attached as exhibits to his declaration. (Obj. to R&R at 30–31.) He also claims, without much explanation, that Lt. Stratton would not have had time to conduct an actual investigation. (*Id.* at 35.)

These objections are largely frivolous and those that are not are trivial. Lt. Stratton would have had personal knowledge of what kind of investigation he was asked to conduct, what paper documentation he was provided, what he and Plaintiff talked about, and what reports he submitted after interviewing Plaintiff. (Stratton Decl. ¶¶ 3, 4.) The letters he was provided (*id.*, Ex. C) are attached as exhibits, with addressed and postmarked envelopes, and their contents speak for themselves. Plaintiff does not question the authenticity of any letter he himself wrote or sent. The letter from Warden L. E. Scribner, which is also attached, is substantially similar to the letter Plaintiff himself attached as FAC Ex. 31,[2] and in any event is offered merely to show what Plaintiff was told and not for the truth of the matters asserted therein.

Lt. Stratton also provided a factual basis, grounded primarily in his own experience, for his conclusions that Plaintiff filed no Form 602 appeals relating to accusations against Sgt. Galban, or against other staff for failing to process complaints of staff misconduct. (Stratton Decl. ¶ 6.) The only possibly incompetent testimony consists of characterizations of the attached letters and a report of a brief conversation with an administrator, but these are merely cumulative of other evidence and do not affect the outcome.

These objections are therefore **OVERRULED**.

### 3. Objection: Defendants Are Estopped from Arguing Non-Exhaustion

Plaintiff has filed a separate motion to strike ("Motion to Strike") which, as noted above, the Court construes as part of Plaintiff's objections. The objections themselves repeatedly make reference to the estoppel argument. (*See, e.g.*, Obj. to R&R at 57.) The motion itself, however, provides the most detailed argument.

---

[2] The wording in the body of each letter is identical. The letter submitted as an exhibit to the Stratton declaration appears to be an administrative file copy; it uses different type for the date, a designation indicating Warden Scribner's signature on the original was administratively affixed, and identifying numerical information near the top.

1      Plaintiff claims Defendants misled him into believing his claims were exhausted, and
2 no more remedies were available. (Motion to Strike at 3; Obj. to R&R at 53.) In support of
3 his position, he cites Cal. Evid. Code § 623 (concerning estoppel) and *Brown v. Valoff*, 422
4 F.3d 926, 935 (9th Cir. 2005). (Motion to Strike at 2.)
5      Plaintiff cites a particular letter in support of this argument, a letter from Warden
6 Scribner, dated January 27, 2006, stating that Plaintiff's allegations were not sustained and
7 further questions should be referred to administrative assistant R. Madden. (Obj. to R&R
8 at 38, 53 (citing FAC, Ex. 31).) Plaintiff contends this letter reliably informed him that no
9 remedies were available. *See Brown*, 422 F.3d at 935 and n.10.
10     Plaintiff misreads the letter, however. It informs him Warden Scribner was responding
11 to a "recent letter" from Plaintiff in which Plaintiff says that on October 18, 2005 he submitted
12 a "written Citizen's Complaint in regards to Correctional Sergeant S. Rutledge." (FAC Ex.
13 31.) The letter further informs Plaintiff:

> A "fact-finding" was conducted into these and related allegations that you had previously made. The result of the "fact-finding" was that the allegations are NOT SUSTAINED, and that staff have acted and treated you in a professional manner.

16 *Id.*
17     This letter does not, as Plaintiff argues, inform him no remedies are available for him
18 to exhaust. Rather, it tells him Warden Scribner was responding to a letter concerning a
19 citizen's complaint sent to the Director of Corrections — not a 602 appeal pursued through
20 established channels. Plaintiff's letter of complaint is apparently the letter attached as
21 Exhibit C to the Stratton Declaration, which is discussed above.
22     Plaintiff's letter charges that the complaint was never processed, that Plaintiff spoke
23 to officials, and that no appropriate response was forthcoming. (Stratton Decl. ¶ 5, Ex. C.)
24 It therefore requests a Director's Review and an investigation. (*Id.*) Whatever Plaintiff may
25 have intended to say or do, the letter he addressed to the Director of Corrections is not a 602
26 appeal, and Warden Scribner's reply can only reasonably be construed as discussing an
27 investigation made pursuant to other kinds of complaints, outside the established grievance
28 process. It does not, as Plaintiff believes, inform him that remedies for the type of injury he

alleges are unavailable through the established grievance process. It neither forbids nor discourages filing a 602 appeal.

In a sense Plaintiff seems to be arguing that after receiving this letter there was no point in filing a 602 appeal. The Supreme Court's holding in *Woodford*, 548 U.S. at 94–95, however, explains why this argument must fail. The Supreme Court's holding makes absolutely clear a prisoner must follow the established prison grievance system, not some other system of his own devising. Nor may a prisoner satisfy the exhaustion requirement by bypassing the administrative process or violating its requirements until his complaint at last falls flat. *Id.* at 95, 97.

This objection is therefore **OVERRULED**.

### 4. Objection: The R&R Should Have Considered FAC Exhibit 45

This is the most substantial of Plaintiff's objections. Plaintiff points to a 602 form attached as Exhibit 45 to the R&R (the "Retaliation 602"). In the area of the form where Plaintiff was asked to describe the problem, he wrote:

> Emergency Appeal Pursuant to CCR Title 15, 3084.7. Circumstances are such that regular appeal time presents a threat to my safety. Classification committee CHo'd me to general population double cell. The action places me at risk. I have attempted to make a complaint against corrections officers and have been issued CDC 115's and 128's in retaliation.

(FAC Ex. 45.) In the area where he was to indicate the actions he was requesting, he wrote: "Stay of release to GP double cell and new Committee hearing and audit of my file." (*Id.*) The form is dated December 15, 2005 and date-stamped as having been received by the appeals office on December 21, 2005.

Plaintiff repeatedly cites to the Retaliation 602 as evidence Defendants made administrative remedies unavailable to him. (Obj. to R&R at 18, 36–37 (accusing Appeals Coordinator D. Edwards of omitting pertinent details in his declaration and arguing this appeal was "undu[]ly rejected under the direction of the Defendants"), 40.)

This 602 form, if it had been properly filed and the appeal pursued, would have exhausted Plaintiff's retaliation claim and possibly notified Defendants of other claims in the FAC. Edwards' supplemental declaration (Dkt. no. 78-6) submitted in support of Defendants'

Motion to Dismiss explains why it was not: "On December 21, 2005, my office received an appeal from Inmate Andrews which was screened out on December 22, 2005, because he could only submit one non-emergency appeal per week." (Edwards Suppl. Decl., ¶ 4(d).)

The declaration's previous paragraph, 4(c), identifies the other non-emergency appeal Plaintiff submitted, a 602 appeal concerning a disciplinary matter which had previously been submitted on November 6, 2005 and was resubmitted on December 15, 2005. This is attached as Exhibit B to the supplemental declaration. This other appeal is dated as having been resubmitted on December 15, 2005 and is date-stamped as having been received in the appeals office on December 21, 2005.[3] It was this appeal that was eventually granted at the second level.

These two 602 forms, then, were signed by Plaintiff and received by the appeals office on the exact same days. The Retaliation 602, which was screened out the day after it was received, is accompanied by a letter explaining:

> The enclosed documents are being returned to you for the following reasons:
>
> ***You may only submit one (1) non-emergency appeal within a seven-calendar day period.***
>
> ***Furthermore, you failed to attach a copy of your most recent CDC 128G Classification chrono to the appeal. This appeal does not meet the Emergency Appeal requirement set forth in [*15 Cal Code Regs. § 3084.7*]. Resubmit this appeal after 12/29/05.***

(FAC, Ex. 44 (emphasis in original).)

The Supreme Court's holding in *Woodford* explains:

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90–91. If, as the letter indicates, the Retaliation 602 was properly screened out for either of the reasons set forth in the rejection letter, Plaintiff failed to comply with

---

[3] The declaration erroneously indicates this appeal was received on December 22, 2005, but the date stamp indicates the correct date was December 21. (Edwards Suppl. Decl., ¶ 4(c).) This appears to be a typographical error because other than this, all nine appeals are listed in chronological order.

1 procedural rules and Defendants cannot rightly be blamed for screening it out rather than processing and acting on it.

Although the Retaliation 602 asserts it is an emergency, the record as a whole makes clear it is not. Since at least September, 2005, Plaintiff had been telling prison officials he thought he would not be safe if he were moved to a double cell in the general population, and had been disciplined for refusing to leave administrative segregation. (*See, e.g.*, FAC, Ex. 32–33.) This particular request has every appearance of a repetition of older claims. The additional claim that officers were retaliating against him by issuing CDC 115's and 128's, though new, is likewise not an emergency. There is no suggestion that having the allegedly false reports dismissed or stopping the filing of new reports was a matter of any urgency, and Plaintiff did not ask for any relief concerning this charge.

Applicable regulations deal with the obvious potential for the submission of excessive appeals by prisoners by requiring the suspension of second and subsequent non-emergency appeals filed within the same seven-day calendar period. 15 Cal. Code Regs. § 3084.4(a)(1). Because neither 602 appeal received on December 21, 2005 was an emergency appeal, one of the two was therefore improperly filed and required to be screened out. By submitting two non-emergency appeals on the same day, Plaintiff was failing to comply with applicable rules.

Accepting the resubmitted 602, which had obviously been pending longer than the Retaliation 602 and which was not primarily a rehash of earlier complaints, was proper. On top of this, Plaintiff failed to attach his Classification chrono to the Retaliation 602 so the reviewing officer would have relevant information concerning his placement. Plaintiff was also specifically told he could cure his errors by resubmitting his Retaliation 602 after December 29, 2005, but he did not do so. And finally, a notice at the bottom of the rejection letter explains the procedure for correcting a screening error; thus, if he thought the wrong appeal was screened out he could have attempted to correct his error, though the pleadings make clear he did not do so.

/ / /

The Court therefore holds Plaintiff did not properly submit his Retaliation 602, which was correctly screened out. Although he had the opportunity to do so, he never resubmitted it. Plaintiff thus failed to exhaust claims raised in this Form 602, and he – not prison officials — was responsible for this.

This objection is therefore **OVERRULED**.

### 5. Objection: The FAC Did Allege a Due Process Claim

The R&R found Plaintiff had not alleged a due process claim in the FAC. (R&R at 19:16–23.) Plaintiff objects that he did in fact bring equal protection and due process claims. (Obj. to R&R at 48) and in his Motion to Amend suggests he stands ready to plead due process violations. (Motion to Amend, ¶ 20.) As discussed above, the only potential claim Plaintiff exhausted before filing suit was a possible procedural due process claim arising from a disciplinary hearing, log number 09-05-B08, which he complained he was not permitted to attend or present evidence at, although he had not waived these rights. (*See* Edwards Suppl. Decl., ¶ 4(c) and Ex. B (Form 602, submitted December 15, 2005, and related documents).) He also alleges other possible due process or equal protection claims, but clearly he has not exhausted any of these.

Even if Plaintiff could show his procedural due process rights were violated and even if he could show he was injured by the violation, neither the FAC nor the objections nor his Motion to Amend give any suggestion he is attempting to bring a claim based on this disciplinary hearing. Rather, he complains of "false writings." (Obj. to R&R at 48.) The "false writing" is identified as Grannis' declaration, which Plaintiff believes wrongly includes a reference to an ultimate finding of a disciplinary violation. (*Id.*, Motion to Amend ¶ 19.) The Grannis declaration Plaintiff is referring to, however, mentions a later conviction, log number 05-A5-06-005, dated May 10, 2006, and not the earlier disciplinary hearing. (Grannis Suppl. Decl. ¶ 4(a).) Plaintiff also refers generally to Defendants' refusal to report complaints of staff misconduct to the office of internal affairs, a duty he argues is statutorily mandated for prisoners' protection. (Obj. to R&R at 48.)

/ / /

Plaintiff also vaguely refers to "other procedural and substantive due process violations," and says he has "irrefutable evidence of exhaustion and prevented availability," but says he is "unsure how to plead" them. (Motion to Amend, ¶ 20.) Whatever due process violations the objections may be referring to, it is clear they do not refer to the one possible claim the Court has identified as exhausted, because Plaintiff was able to summarize that claim easily in a Form 602.

Whether the Court construes this as an objection or a request for leave to amend, it must fail. Objections must be specific, not vague and general, and Plaintiff has not shown he can successfully amend to add the claims he wishes to bring. If anything, his Motion to Amend suggests the amendment would be insufficient because, even now, Plaintiff does not know what shape his amendments would take.

These objections are therefore **OVERRULED**.

### 6. Objection: Lt. Stratton's Report Was Improperly Withheld

Plaintiff objects to Lt. Stratton's assertion of privilege in his declaration. (Obj. to R&R at 32, 56.) Apparently he means two things by this: first, that the omission of some information renders Lt. Stratton's declaration suspect, and second, that the investigative reports Lt. Stratton refers to should have been disclosed.

Lt. Stratton's declaration refers to reports from "a full fact-finding review into Inmate Andrews' allegations" of an assault by Sgt. Galban and subsequent retaliation and cover-up. "Privilege" is a misnomer here; Lt. Stratton actually said the reports were confidential, though he cited evidence he found (or looked for and did not find), on which he based his report. Lt. Stratton is correct in stating that reports concerning an investigation of a law enforcement officer's alleged misconduct are treated as confidential. *See, e.g., Williams v. Malfi*, 2008 WL 618895, slip op. at *8 n.11 (C.D.Cal. Jan. 25, 2008) (discussing procedures used to safeguard confidential law enforcement personnel files before disclosing them to litigants). In any event, it is the evidence underlying the report, and not the report itself that Lt. Stratton mentions.

/ / /

To the extent Plaintiff is objecting to Defendants' failure to produce these files during discovery, he does not show he ever sought these reports, and in any case his objection comes much too late.

This objection is therefore **OVERRULED**.

### 7. Objection: Plaintiff Should Be Permitted to Amend to Add Claims and Defendants

The R&R recommended denying Plaintiff leave to amend his complaint a second time to add multiple Defendants. Plaintiff then filed a motion for leave to amend (Dkt. no. 96) ("Motion to Amend"), which the Court construes as part of his objections. He also included this in his objections to the R&R. (Obj. to R&R at 24, 49.)

Plaintiff's Motion to Amend is based on claims that he could not properly file the FAC because he was "under distress and fear" and he would now like to add claims he omitted in the FAC. He describes in great detail the emotional turmoil he suffered when, in connection with a transfer, his legal materials were lost. (*See* Decl. in Supp. of Motion to Amend, ¶ 5.) He mentions loss of his legal materials as a factor in his failing to file as good an amended complaint as he had hoped to. Then, unexpectedly, his materials turned up before the Court adopted the first report and recommendation in its Dismissal Order. (*Id.*, ¶ 7.) For some reason, however, Plaintiff claims this was no real help to him, and merely caused him additional stress and delay. (*Id.*, ¶ 9.)

Plaintiff also discusses the Dismissal Order, which the Court initially issued, then withdrew and modified. He says the issuance of the modified order caused him additional turmoil and distress because, he claims, the modified order "completely changed its previous determinations [and] I was required to start completely over." (*Id.*, ¶ 8.)

With regard to the Court's order, this is completely untrue. Plaintiff's claimed turmoil, fear, and distress is either exaggerated or else a gross overreaction. The second, corrected Dismissal Order was issued a mere ten days after the first. It dismissed more claims than the first did, and left unaltered the Court's dismissal of Plaintiff's due process and equal protection claims. Therefore, it is difficult to see how Plaintiff lost very much of his work, if

he lost any at all. A reasonable response would have been to leave the initially undismissed claims alone and work on the dismissed ones. When the second order replaced the first, Plaintiff would have realized he had more work than he originally thought, but he would not have had to throw his work out entirely. Even assuming Plaintiff worked assiduously in those ten days, the emotional stress of losing the benefit of some of that work would not reasonably cause emotional disability as Plaintiff now claims it did.

If Plaintiff needed more time to amend, he could have sought it, as evidenced by the fact that his unopposed motion for an extension of time in which to file his FAC was granted. If he filed the FAC too hastily and made errors, he could have sought leave to correct them in light of the Court's order granting him more time in which to amend. Plaintiff identifies no adequate reason to treat the original complaint and FAC as trial runs and allow him to amend again.

In the FAC, Plaintiff attempts to add Defendants, accusing them of being complicit in some kind of conspiracy against him to manipulate cell assignments to cause him harm. (FAC at 55.) He also seeks to add officials whom he accuses of retaliating against him by transferring him to Pelican Bay State Prison. (FAC at 56.) He mentions these claims in his objections to the R&R as well. (Obj. to R&R at 24, 49.) All these proposed claims are unexhausted, so granting leave to add them would be futile.

These objections are therefore **OVERRULED.**

## V.     Defendants' Objections

Defendants object to the R&R's recommendation that the FAC be dismissed because Plaintiff has not exhausted administrative remedies, rather than for failure to state a claim, and that Plaintiff not be charged with a strike.

As provided in 28 U.S.C. § 1915(g),

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Here, the FAC is being dismissed without leave to amend for failure to exhaust administrative remedies, not on the grounds that it is frivolous, or malicious, or fails to state a claim.

Defendants have not cited any authority, however, nor is the Court aware of any, requiring the Court to first reach the issue of whether a complaint states a claim before reaching the exhaustion question, when the same motion urges dismissal on both grounds. *See, e.g., O'Neal v. Price*, 531 F.3d 1146, 1154 n.9 (9th Cir. 2008) (citing with approval the observation of *Tafari v. Hues*, 473 F.3d 440, 444 (2d Cir. 2007) that an appeal may be dismissed as premature even though it later proves to be frivolous).

The Ninth Circuit has apparently not addressed the issue of whether dismissal for failure to exhaust administrative remedies counts as a strike under § 1915(g), although a number of other circuits have. *See Daniels v. Woodford*, 2008 WL 2079010, slip op. at *5 (C.D.Cal., May 13, 2008) (citing cases). *Compare also Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) (holding dismissal for failure to exhaust constitutes strike under § 1915(g))*; Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003) (same)*; Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (same); and *Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 460 (5th Cir. 1998) (same) *with Owens v. Isaac*, 487 F.3d 561, 563 (8th Cir. 2007) (holding dismissal for failure to exhaust does not count as a strike); *Green v. Young,* 454 F.3d 405, 406 (4th Cir. 2006) (same); *Snider v. Melindez*, 199 F.3d. 108, 115 (2nd Cir. 1999) (same).

The Ninth Circuit's favorable citation of *Snider* and its progeny *Tafari* in *O'Neal* at 1154 n.9 for a related point, together with the court's reasoning in *Daniels* persuade the Court dismissal for failure to exhaust should not be counted as a strike under § 1915(g).

Defendants' objections are therefore **OVERRULED**. Bearing in mind future rulings may clarify the law on this point, however, neither Defendants nor any other parties are barred from seeking to have this dismissal counted as a strike for § 1915(g) purposes as appropriate at a later time.

/ / /

**VI.     Conclusion and Order**

For the reasons set forth above, the Court **ADOPTS** the R&R, with the additional explanations set forth above. Plaintiff's request for judicial notice of 15 Cal Code Regs. § 3401.5 is **GRANTED**. All claims against Defendants for money damages are **DISMISSED WITH PREJUDICE**. The Court also **REAFFIRMS** its previous dismissal of all claims against the CDCR. In all other respects the FAC is hereby **DISMISSED WITHOUT PREJUDICE** but **WITHOUT LEAVE TO AMEND**, for failure to exhaust administrative remedies. Plaintiff's request for leave to add claims and Defendants is **DENIED**. Defendants' request that Plaintiff be charged with a strike under § 1915(g) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

DATED: March 27, 2009

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge